[No. D008463. Fourth Dist., Div. One. July 27, 1989.]

THE PEOPLE, Plaintiff and Respondent, v.
ARMANDO RUBIN LOPEZ RIVERA, Defendant and Appellant.

**COUNSEL**

Robert Wayne Gehring, under appointment by the Court of Appeal, for Defendant and Appellant.

John K. Van de Kamp, Attorney General, Steve White, Chief Assistant Attorney General, Harley D. Mayfield, Assistant Attorney General, Michael D. Wellington and Esteban Hernandez, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**KREMER, P. J.**—Armando Rubin Lopez Rivera pleaded guilty to burglary (Pen. Code,[1] § 459), receiving stolen property (§ 496, subd. 1), auto theft (Veh. Code, § 10851, subd. (a)) and possession of narcotics paraphernalia (Health & Saf. Code, § 11364). He was sentenced to four years in prison and ordered to pay $1,591 in restitution to the victims of the receiving stolen property and auto theft offenses. On appeal, Rivera attacks the restitution order.

### FACTS

Since Rivera pleaded guilty, we take the facts from the probation report.

At about 1 p.m. on May 28, 1988, Rivera walked into Eric Myrmel's garage and removed some tools. Myrmel confronted Rivera and asked what he was doing with the tools. Rivera replied, "Okay just take your stuff, just take your stuff." Myrmel grabbed Rivera and detained him for the police. In the vehicle used by Rivera, the police found miscellaneous tools belonging to Myrmel which were worth about $1,220. All of the stolen property was returned to Myrmel.

In searching the vehicle, the police also found tools belonging to Mary Jane Swett. The tools were worth about $800. Other tools belonging to Swett valued at $1,200 were not recovered.

When the police ran a registration check on the vehicle, they found it had been stolen the previous afternoon from a business owned by the Corbetts. Ms. Corbett reported damage and storage costs for the car amounting to $391.

In the glove compartment of the car, the police found a narcotics hypodermic kit with residual white powder in it. Ms. Corbett reported the glove compartment had been empty when the car was stolen.

### DISCUSSION

### I

■ Rivera contends the court's restitution order was ambiguous.

The court here ordered Rivera to pay restitution of $1,591 "to the victim listed on page 4 of the probation officer's report which is dated 7-15-88

---

[1] All statutory references are to the Penal Code unless otherwise specified.

. . . ." As Rivera points out, on page 4 of the probation report, two victims are listed (Myrmel and Swett) and the only loss listed is Swett's loss of $1,200. Thus, Rivera claims the court's restitution order was ambiguous and he was placed "in an unenviable position of guessing at the court's intent and risking the consequences if the guess was wrong."

The restitution order is not ambiguous; the record when read as a whole is quite clear as to which victims were to receive restitution and in what amount, a fact which apparently was clear to Rivera below since he did not raise the issue. In the probation report section concerning the victims, only two victims are listed having suffered any loss: Swett for $1,200 and the Corbetts for $391. The total restitution recommended was $1,591, the total of these two figures. That was the amount of restitution ordered. No reversal or remand is required on this basis.

## II

■■■ Rivera contends restitution to a victim cannot be ordered without a determination he had the ability to pay the restitution.

Under Penal Code section 1202.4, subdivision (a): "In any case in which a defendant is convicted of a felony, the court shall order the defendant to pay a restitution fine as provided in subdivision (a) of Section 13967 of the Government Code. *Such restitution* fine shall be in addition to any other penalty or fine imposed and *shall be ordered regardless of the defendant's present ability to pay*. However, if the court finds that there are compelling and extraordinary reasons, the court may waive imposition of the fine. When such a waiver is granted, the court shall state on the record all reasons supporting the waiver." (Italics added.)

■■■ "Government Code section 13967 is designed to compensate crime victims for economic losses suffered as a direct result of a crime." (*People* v. *Serna* (1988) 203 Cal.App.3d 728, 730 [249 Cal.Rptr. 861].) Subdivision (a) of Government Code section 13967 seeks to achieve this result by providing for restitution fines which are deposited in the Restitution Fund in the State Treasury.[2] In 1986, the Legislature added subdivision (c) to Government

[2] Government Code section 13967, subdivision (a) provides: "Upon a person being convicted of any crime in the State of California, the court shall, in addition to any other penalty provided or imposed under the law, order the defendant to pay restitution in the form of a penalty assessment in accordance with Section 1464 of the Penal Code. In addition, if the person is convicted of one or more felony offenses, the court shall impose a separate and additional restitution fine of not less than one hundred dollars ($100) and not more than ten thousand dollars ($10,000). In setting the amount of the fine for felony convictions, the court shall consider any relevant factors including, but not limited to, the seriousness and gravity of the offense and the circumstances of its commission, any economic gain derived by the defendant

Code section 13967 to provide for direct restitution to the victim. (See Stats. 1986, ch. 1438, § 1.) Subdivision (c) provides: "In cases in which a victim has suffered economic loss as a result of the defendant's criminal conduct, and the defendant is denied probation, *in lieu of imposing all or a portion of the restitution fine,* the court shall order restitution to be paid to the victim. Notwithstanding subdivision (a), *restitution shall be imposed in the amount of the losses,* but not to exceed ten thousand dollars ($10,000). A restitution order imposed pursuant to this subdivision shall identify the losses to which it pertains, and *shall be enforceable as a civil judgment.* The making of a restitution order pursuant to this subdivision shall not affect the right of a victim to recovery from the Restitution Fund in the manner provided elsewhere, except to the extent that restitution is actually collected pursuant to the order. Restitution collected pursuant to this subdivision shall be credited to any other judgments for the same losses obtained by the victim against the defendant arising out of the crime for which the defendant was convicted." (Italics added.)

 To support his argument that he is entitled to a hearing on ability to pay prior to imposition of direct restitution to the victims, Rivera relies on cases involving restitution as a condition of probation. Those cases are distinguishable. As the court explained in *People* v. *Long* (1985) 164 Cal.App.3d 820, 826-827 [210 Cal.Rptr. 745], in addressing restitution fines imposed pursuant to Government Code section 13967, subdivision (a): "The reason for requiring such hearing on ability to pay [in the probation context] is obvious: when restitution to the victim is imposed as a condition of probation, failure to make restitution as ordered by the court is a violation of probation which can result in the incarceration of a defendant. As pointed out by the court in *People* v. *Kay,* '[a]n indigent defendant cannot be imprisoned because of his inability to pay a fine, even though the fine be imposed as a condition of probation.' [Citations.]"

". . . . . . . . . . . . . . . . ."

"However, the constitutional infirmity which necessitates consideration of a defendant's ability to pay restitution or a fine when failure to do so will result in imprisonment is inapplicable *by statute* to fines imposed pursuant to Government Code section 13967. Section 1205.5, added to the Penal

as a result of the crime, and the extent to which others suffered losses as a result of the crime. Such losses may include pecuniary losses to the victim or his or her dependents as well as intangible losses, such as psychological harm caused by the crime. Except as provided in Section 1202.4 of the Penal Code and subdivision (c) of this section, under no circumstances shall the court fail to impose the separate and additional restitution fine required by this section. This fine shall not be subject to penalty assessments as provided in Section 1464 of the Penal Code."

Code as part of the package of legislation which amended Government Code section 13967, provides, 'The provisions of Section 1205 [providing for imprisonment until a fine has been satisfied] shall not apply to restitution fines ordered in felony cases.' Government Code section 13967.5 makes clear that unpaid amounts of the restitution fine shall be deemed a debt owing to the state; section 1214, subdivision (a), provides, 'If the judgment is for a fine with or without imprisonment, the judgment may be enforced in the manner provided for the enforcement of money judgments generally.' [Citations.]" (*People* v. *Long, supra,* 164 Cal.App.3d at pp. 826-827.)

Rivera argues this reasoning does not apply to direct restitution ordered pursuant to subdivision (c) of Government Code section 13967 because section 1205.5 only exempts "restitution fines" which are ordered under subdivision (a) and not direct restitution to the victim which is ordered under subdivision (c). This argument is without merit.

First, section 1205.5 which allows imprisonment for nonpayment, by its terms, applies only to "fines." Under Rivera's theory, an order directing restitution to the victim is not a "fine." If it is not a "fine," then Rivera does not have to worry about being imprisoned pursuant to section 1205 for failing to pay the ordered restitution because section 1205 applies only to "fines." If Rivera's characterization of direct restitution as a "fine" is incorrect, then Rivera still need not worry about incarceration for nonpayment since a "fine" imposed under Government Code section 13967, subdivision (c) must be a "restitution fine" which is expressly exempted from the threat of imprisonment for nonpayment by section 1205.5.

We believe the reasoning supporting the constitutionality of ordering a restitution fine under subdivision (a) of Government Code section 13967 applies equally to an order pursuant to subdivision (c) of Government Code section 13967. Unlike the situation involving restitution as a condition of probation, a defendant cannot be imprisoned for failing to pay the restitution ordered under Government Code section 13967, subdivision (c); Government Code section 13967, subdivision (c) expressly provides it "shall be enforceable as a civil judgment." We conclude a court may order direct restitution to a victim without regard to the defendant's ability to pay. (See *People* v. *Sandoval* (1989) 206 Cal.App.3d 1544, 1550 [254 Cal.Rptr. 674].)

### III

Rivera contends a defendant has a right to a jury trial on the issue of restitution. Rivera contends ordering restitution to a crime victim is essentially the same as an award of damages in a civil proceeding, points to language in the California Constitution, article 1, section 16 stating, "Trial

by jury is an inviolate right and shall be secured to all . . . ." and concludes the effect of ordering restitution to the victims in a criminal action "is to deprive a criminal defendant of the full panoply of rights available in a civil trial, including, for example, protection of the rules of evidence (for example, necessity of sworn statements and exclusion of inadmissible hearsay), discovery, the ability to cross-examine, and the collective verdict of the jury itself."

A defendant may be entitled to relief related to his sentence on due process grounds "if the hearing procedures are fundamentally unfair." (*People* v. *Peterson* (1973) 9 Cal.3d 717, 726 [108 Cal.Rptr. 835, 511 P.2d 1187].)

Initially, we note here Rivera neither contested the amount of restitution nor sought to have any hearing (let alone trial by jury) on the restitution issue and therefore waived this issue.

Further, in *People* v. *Baumann* (1985) 176 Cal.App.3d 67 [222 Cal.Rptr. 32], we addressed and rejected a similar due process challenge where restitution was ordered as a condition of probation. We stated: "The requirements of due process are satisfied by providing the defendant a hearing on ability to pay as well as the extent of the loss occasioned by the defendant's criminal conduct. An order of restitution as a condition of probation is not an abuse of discretion as long as the defendant is given an opportunity to present evidence rebutting her civil liability at the sentencing hearing. [Citations.]

"In *People* v. *Harley* (1984) 163 Cal.App.3d 126, 130 [209 Cal.Rptr. 131], it was said: 'Since a defendant will learn of the amount of restitution recommended when [s]he reviews the probation report prior to sentencing, the defendant bears the burden at the hearing of proving that amount exceeds the replacement or repair cost.' . . . Due process is considered satisfied in the criminal law as long as a separate hearing is held to determine the value of the victim's loss. [Citation.]" (176 Cal.App.3d at pp. 79-80.)

In *Baumann,* we expressly rejected the defendant's argument she was entitled to a jury trial on the amount of restitution as being "without merit." (176 Cal.App.3d at p. 80.) We further held the trial court was entitled to consider the probation report when determining the amount of restitution. ▆ " 'Due process does not require a judge to draw sentencing information through the narrow net of courtroom evidence rules . . . sentencing judges are given virtually unlimited discretion as to the kind of information they can consider and the source from whence it comes.' [Citation.]" (*Id.* at p. 81.)

 Thus, under the reasoning of *Baumann,* a defendant's due process rights are protected if he is given notice of the amount of restitution sought and an opportunity to contest that amount; the rigorous procedural safeguards required during the guilt phase, including the right to a jury, are not required. Rationally, if a defendant who is ordered to pay restitution as a condition of probation is not entitled ·to a jury trial on the amount of restitution then a defendant who is sentenced to prison and ordered to pay direct restitution is also not entitled to a jury trial on the amount of the restitution since in the latter case the defendant does not face a threat of imprisonment for nonpayment of the restitution.

We conclude there was no fundamental unfairness in the procedures and decline to reverse on this ground.

## IV

 Rivera contends the court improperly ordered him to pay direct restitution to Swett based on his conviction of receiving stolen property.

We recently addressed this issue in *People* v. *Scroggins* (1987) 191 Cal.App.3d 502 [236 Cal.Rptr. 569]. In that case, Scroggins was charged with and pleaded guilty to receiving stolen property. As a condition of probation, the court ordered Scroggins to pay restitution of $2,366 to various burglary victims. Scroggins contended the restitution order compelled him to pay restitution for crimes he did not commit and for damages not proximately caused by him. We agreed and held the restitution order was "inconsistent with the state's statutory directives and case law." (*Id.* at p. 505.)

We first turned to the Supreme Court decision in *People* v. *Richards* (1976) 17 Cal.3d 614 [131 Cal.Rptr. 537, 552 P.2d 97], where the court held that although the law allowing restitution as a condition of probation did not limit restitution to the actual losses caused by the crime proved, it warned: "[C]ourts must tread lightly in this area lest they be reduced to 'mere collection agencies' [citations], and restitution must in each case be narrowly tailored to serve a purpose described in section 1203.1 [granting the court broad discretion to prescribe probationary conditions, including restitution]." (*Id.* at p. 620.) In *Richards,* the court concluded that to be valid a restitution condition of probation which exceeds the loss caused by defendant's offense must serve a rehabilitative purpose, a purpose which cannot be served "unless the act for which the defendant is ordered to make restitution was committed with the same state of mind as the offense of which he was convicted . . . ." (*Id.* at p. 622.)

We concluded the probationary condition of restitution did not relate to the crime for which Scroggins was convicted nor was there any "relationship between it and the potential for a 'salutary' rehabilitative effect it could have on the defendant. [Citation.]" (*People* v. *Scroggins, supra,* 191 Cal.App.3d at p. 506.) We explained: "Here, Scroggins was never charged with or found to be criminally responsible for the burglaries. He was charged and convicted of receiving stolen property, and those items of property were recovered by the police and presumably returned to the rightful owners. Nevertheless, the trial court ordered Scroggins to pay restitution to burglary victims, whose losses were not connected to Scroggins's crime. The court did not conclude—nor from this record could it have—that Scroggins was responsible for these other losses that it ordered paid." (*Ibid.*)

We further held the restitution order failed to meet statutory requirements. We looked to section 1203.04, subdivision (d), which in pertinent part states: " '[R]estitution' means full or partial payment for the value of stolen or damaged property . . . which losses were caused by the defendant as a result of committing the crime for which he or she was convicted." We concluded there was "no showing . . . Scroggins's conduct proximately caused the $2,366 in losses suffered by the burglary victims." (*People* v. *Scroggins, supra,* 19 Cal.App.3d at p. 506.)

The reasoning of *Scroggins* applies equally to a case where restitution is imposed in addition to a prison term under Government Code section 13967, subdivision (c) since that section specifically limits the restitution order to the victim's actual losses. Here, as in *Scroggins,* there was no showing Rivera was responsible for the losses suffered by the burglary victim (Swett); that property which was the subject of the receiving stolen property conviction was returned to her and does not represent a loss suffered by her.

The Attorney General argues Rivera is estopped from raising the issue on appeal because he entered into a plea bargain. The Attorney General asserts "[Rivera's] efforts at this point in time to void the restitution aspect of his plea bargain while retaining the benefit of a reduced sentence is 'calculated to perpetuate a fraud upon the court and the People.' " The Attorney General states Rivera should not be permitted " 'to trifle with the courts.' "

We do not agree with the Attorney General's reading of the record. The record indicates Rivera did not enter into a plea bargain. The record shows the bargain originally offered by the district attorney was withdrawn and Rivera pleaded guilty to all counts as charged.

The Attorney General argues Rivera admitted his participation in causing Swett's loss. The Attorney General quotes the following language from

the probation report: "he [appellant] frankly admits his *responsibility in the theft* of property from the two victims in counts 1 & 2." (Italics added.) This language is contained in the section of the probation report addressing factors in mitigation and is used to support as a mitigating factor rule 423(a)(5) of the California Rules of Court.[3] This language appears to be derived from the probation officer's interview with Rivera. In that interview, Rivera stated he was walking down the street when a friend came by and offered to give him a ride. He did not realize her car was stolen. Rivera said she was the one who actually took the tools in the burglary but she "faded" into the crowd when the police arrived. When the probation officer asked Rivera why he pleaded guilty to all the charges, "he stated that he guesses he is responsible since he was with the girl who stole the car and he was involved in the burglary." The probation officer concluded Rivera gave "a fairly accurate account of how the offense occurred, in light of the statements made by the victim of the auto theft."[4]

Thus, while the probation officer stated Rivera admitted "his responsibility in the theft of property from the two victims in counts 1 & 2," the record indicates Rivera only admitted his involvement in the crimes as charged; he did not admit burglarizing Swett, he only admitted being involved in the Myrmel burglary. On this record, we cannot say Rivera expressly admitted participating in the theft of Swett's property.

The Attorney General argues Rivera expressly waived this issue since at the sentencing hearing Rivera's attorney stated: "As I said, *I have reviewed the [probation report] matter with Mr. Rivera* and certainly in terms of a prison commitment *we cannot argue with the recommendation that was made.*" (Italics as added by the Atty. Gen.) This statement is clearly addressed to the prison commitment recommendation, not the restitution order and therefore does not support the Attorney General's argument Rivera made an express waiver of the restitution issue.

The Attorney General also argues Rivera should be estopped from raising the issue on appeal because he failed to raise it below. We disagree. First, the question presented is solely a matter of law. Second, as the court explained in *People* v. *Benton* (1979) 100 Cal.App.3d 92, 102 [161 Cal.Rptr. 12]: "It is well established that when the trial court pronounces a sentence

---

[3] Rule 423(a)(5) provides the court may consider as a factor in mitigation the fact that "[a] defendant with no apparent predisposition to do so was induced by others to participate in the crime."

[4] The auto theft victim stated it was "very likely" that a young, blond woman who had been "hanging around" the business was the one who stole the car rather than Rivera since "[a]lthough [the victim] was busy, she saw no young men fitting the description of Rivera in the area at the time the vehicle was stolen, but she does clearly recall the young woman and could recognize her if she saw her again."

which is unauthorized by the Penal Code that sentence must be vacated and a proper sentence imposed whenever the mistake is appropriately brought to the attention of the trial court or the reviewing court." This rule also applies to sentences which are unauthorized because of an error in the matter of restitution. (See *People* v. *Rowland* (1988) 206 Cal.App.3d 119, 126-127 [253 Cal.Rptr. 190].) We conclude the issue could properly be raised on appeal.

### DISPOSITION

The restitution payable to Swett ($1,200) is vacated, and the judgment affirmed as modified.

Todd, J., and Benke, J., concurred.